UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Hon. Joseph H. Rodriguez |
| *Plaintiff*, | : | CRIM NO. 14-173 |
| v. | : | OPINION |
| JEROME JOHNSON, | : | |
| *Defendant.* | : | |

These matters come before the Court on several motions by *pro se* Defendant Jerome Johnson ("Defendant") for Reduction of Sentence under the First Step Act 18 U.S.C. § 3582 (c)(1)(A)(i), To Supplement and Amend the Motion, For Judicial Notice, Motion Seeking Re-Sentencing pursuant to *Concepcion v. United States* 142 S.CT. 52,210 L. Ed 2d 1024 (2022), and on Motion of Defendant's Counsel under the First Step Act 18 U.S.C. § 3582 (c)(1)(A)(i) seeking similar relief.[1]

The Court has considered Defendant's submissions and, for the reasons stated below, will deny Defendant's Motions, but give counsel leave to amend to include Mr. Johnson's recent cancer diagnosis and the conditions at Federal Medical Center Butler.

---

[1] The Motions are as follows: [Dkt. No. 86] Motion for Reduction of Sentence Under First Step Act 18 U.S.C. 3582 (c)(1)(A) COVID-19; [Dkt. No. 87] Motion to Amend/Correct [86] Motion for Reduction of Sentence Under First Step Act 18 U.S.C. 3582 (c)(1)(A) COVID-19; [Dkt. No. 88] Motion to Amend/Correct [87] Motion to Amend/Correct [86] Motion for Reduction of Sentence Under First Step Act 18 U.S.C. 3582 (c)(1)(A) COVID-19; [Dkt. No. 89] Moton Judicial Notice Under Rule 201 re [86] Motion for Reduction of Sentence Under First Step Act 18 U.S.C. 3582 (c)(1)(A) COVID-19; [Dkt. No. 95] Motion Under Rule 201 Judicial Finding of Fact; [Dkt. No. 97] Motion for Reduction of Sentence Under First Step Act 18 U.S.C. 3582 (c)(1)(A) COVID-19; [Dkt. No. 98] Motion for Reduction of Sentence Under First Step Act 18 U.S.C. 3582 (c)(1)(A) COVID-19; [Dkt. No. 100] Supplemental Motion for Reduction of Sentence Under First Step Act 18 U.S.C. 3582 (c)(1)(A) COVID-19- filed by counsel.

### I. Background

Mr. Johnson was charged in a seven-count indictment alleging a conspiracy to commit murder for hire as well as various other firearm related offenses on April 2, 2014. He pleaded guilty to counts one, four and six of the indictment, conspiracy to commit murder for hire, knowing transfer of a firearm for use in a crime of violence, and possession and use of a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1)(A)(III), 924(h), and 1958. Mr. Johnson was sentenced on October 25, 2017, to 168 months' imprisonment, followed by 5 years of supervised release, and ordered to pay restitution in the amount of $15,427.94. At the time of the present filings, Mr. Johnson was serving his term of imprisonment at FCI Fort Dix, in New Jersey, and FCI Schuylkill, in Pennsylvania. According to the Bureau of Prisons ("BOP"), it appears that Mr. Johnson is now at FMC Butner, in North Carolina. Assuming he receives good conduct credit, he is scheduled for release on December 17, 2025. [Dkt. No. 100, Ex. A Sentry Report (Filed Under Seal)]. Although Mr. Johnson states he may be released sooner.

Mr. Johnson's sentry report confirms that he has not incurred any violent disciplinary violations or infractions throughout his time in custody. *Id.* Mr. Johnson is a 53-year-old African American male and reports that he has twenty children.[*Id.* Ex. C.] BOP Medical records, indicate Mr. Johnson contracted COVID-19 in July 2020, along with many other prisoners at his institution. Mr. Johnson has been offered, and has accepted, the Pfizer vaccine at FCI Schuylkill. Despite being vaccinated, however, Mr. Johnson maintains that he is still at risk of reinfection, or infection by a new variant of the coronavirus, especially because he is obesity and suffers from hypertension and chronic kidney disease.

Even if Defendant's medical condition and the circumstances at FCI for Dix presented extraordinary and compelling circumstances for compassionate release, "a court may deny the requested relief if the 18 U.S.C. § 3553(a) factors[2] do not weigh in favor of the defendant's release." *United States v. Adams*, No. 3:00-CR-00697, 2020 WL 6063055, at *5 (D.N.J. Oct. 14, 2020) (citing *United States v. Pawlowski*, 967 F.3d 327 (3d Cir. 2020)).

Defendant seeks compassionate release under the First Step Act, 18 U.S.C. § 3582(c)(1)(A), alleging that the COVID-19 outbreak at FCI Fort Dix and his "hypertension, chronic kidney disease, hyperlipidemia, obesity, PTSD, depression, an enlarged prostate, and a history of substance abuse" make him particularly vulnerable to illness, particularly COVID-19 and constitute extraordinary and compelling reasons for his release. On April 18, 2023, Mr. Johnson filed a letter regarding other matters in which he mentions that he has recently been diagnosed with prostate cancer. [Dkt. 102, Under Seal].

## II. Legal Standard

---

[2] These factors include:

    (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
    (2) the need for the sentence imposed
        (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
        (B) to afford adequate deterrence to criminal conduct;
        (C) to protect the public from further crimes of the defendant; and
        (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner

18 U.S.C. § 3355(a).

Generally, a district court may not modify a term of imprisonment once it has been imposed, unless the case meets one of the limited exceptions under the First Step Act ("the Act"). Pursuant to the Act, a court may modify an imposed term of imprisonment—

(1) in any case—

   (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

   (i) extraordinary and compelling reasons warrant such a reduction; or

   (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g); and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission; and

   (B) the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure; and

18 U.S.C. § 3582(c).

The Sentencing Commission issued a policy statement concerning reduction in term of imprisonment under the Act, which provides in pertinent part that after considering applicable factors set forth in 18 U.S.C. § 3553(a), "the court may reduce a

term of imprisonment if the court determines that—Extraordinary and compelling reasons warrant the reduction . . . the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and the reduction is consistent with this policy statement." U.S.S.G. 1B1.13. As set forth in the policy statement, a defendant's medical condition may qualify as an extraordinary and compelling reason, if the defendant is suffering from a terminal illness or the defendant is,

> (C) suffering from a serious physical or medical condition,
>
> (D) suffering from a serious functional or cognitive impairment, or
>
> (E) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

*Id.* Additional circumstances that may qualify include, the age of the defendant, family circumstances, and other reasons. *Id.*

### III. Discussion

The issue before the Court is whether Defendant Johnson has demonstrated that extraordinary and compelling reasons warrant his early release from custody. As to the present motions, the Court finds that Defendant has failed to do so.

To bring a claim for compassionate release, an inmate must first exhaust his administrative remedies by petitioning the BOP for release. 18 U.S.C. § 3582(c)(1)(A); *see also United States v. Bogdanoff*, 459 F. Supp. 3d 653, 657 (E.D. Pa. 2020) (noting that federal courts lack jurisdiction to consider compassionate release motions if defendant fails to satisfy First Step Act's exhaustion requirement). "Thirty days after submitting the request, the defendant may move for compassionate release in the district court, whether the warden denied the request or did not act on it. *United States*

*v. Mims*, No. CR 13-00429 (RBK), 2021 WL 1311036, at *2 (D.N.J. Apr. 8, 2021) (citing *United States v. Raia*, 954 F.3d 594, 595–96 (3d Cir. 2020)). Defendant Johnson claims that he submitted requests for compassionate release to the warden at FCI Fort Dix on March 30, 2020, and finally after 50 days on May 20, 2020, he received his denial.[3] The Court is satisfied based on Defendant's representations that he has fulfilled his exhaustion requirement and that the Court has jurisdiction to consider his request.

To grant Defendant's request for early release, the Court must first find that Defendant's health or medical conditions present an extraordinary and compelling reason for reducing Defendant's sentence considering the COVID-19 pandemic. *See United States v. Hynes*, No. 3:18-CR-00222, 2020 WL 6060984, at *3 (D.N.J. Oct. 14, 2020). Courts look to those conditions that the CDC has identified as "high-risk" factors to make this determination. *See, e.g., United States v. Catanzarite*, No. CR 18-0362 (ES), 2020 WL 2786927, at *4 (D.N.J. May 29, 2020).

Defendant argues that the COVID-19 outbreak at FCI-Fort Dix coupled with his numerous medical issues, including hypertension, chronic kidney disease, hyperlipidemia, obesity, PTSD, depression, an enlarged prostate, and a history of smoking and other substance abuse, constitute an extraordinary and compelling reasons for reducing his sentence. Defendant's medical records confirm that he has had COVID-19 and received the vaccine but is does not appear that he has ever been hospitalized due to his medical issues or his bought with the COVID-19 virus. The CDC has identified several of Mr. Johnson's medical issues as conditions that "can make" and individual

---

[3] Defendant's denial letter is attached to Counsel's Motion as Ex. B.

"more likely to get severely ill from COVID-19." *See People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited September 11, 2023). According to the CDC, African Americans "experience higher rates of COVID-19 related hospitalization and death compared with non-Hispanic White populations." *See CDC, Health Equity Considerations and Racial and Ethnic Minority Groups* (Jan. 25, 2022), at https://www.cdc.gov/coronavirus/2019-ncov/community/health-equity/race-ethnicity.html#anchor_1595551043298. Given Mr. Johnson's race and co-morbidities obesity, the Court assumes that Mr. Johnson remains vulnerable to new COVID-19 variants which is at a greater risk of severe illness or death if he were to recontract the virus.

However, the COVID-19 pandemic does not currently present an extraordinary threat to Defendant or other inmates at FCI Fort Dix, or FCI Schuylkill, where Mr. Johnson was also housed.[4] While the COVID-19 virus infected a shocking number of inmates at FCI Fort Dix, available information suggests that the situation there has improved considerably. Since the pandemic began, at least 1,748 inmates at FCI Fort Dix have contracted and recovered from the COVID-19 virus and two inmates have died. Fed. Bureau of Prisons, *COVID-19 Coronavirus*, https://www.bop.gov/coronavirus/covid19_statistics.html (last visited September 11, 2023). These are astonishing numbers for a facility that currently houses over 2,600[4]

---

[4] Mr. Johnson filed two motions [Dkt. Nos. 89,95] seeking judicial notice of the changing conditions at FCI Fort Dix as they relate to the presence of the COVID-19 virus by virtue of positive cases amongst staff and inmates and the institution's response, or lack of response, to spread, treatment and containment. The changing impact and presence of the virus, in any place, is not a phenomenon unique to FCI Fort Dix and is, in that regard, part of the Court's consideration of the threat and continued threat posed by the virus, its variants and ability to vary. Given that Mr. Johnson is no longer at FCI Fort Dix, however, these motions will be dismissed as moot.

inmates. Fed. Bureau of Prisons, *FCI FORT DIX*, https://www.bop.gov/locations/institutions/ftd/index.jsp (last visited September 11, 2023). But the facility currently has few active cases among inmates and/or staff members. Fed. Bureau of Prisons, *COVID-19 Coronavirus*, https://www.bop.gov/coronavirus/covid19_statistics.html (last visited September 11, 2023).

In addition, Importantly, 1,634 inmates at FCI Fort Dix have been fully vaccinated against the COVID-19 virus. This widespread vaccination may reduce the risk of COVID-19 spread and, therefore, reduce the risk that Defendant will contract COVID-19. *See* Ctrs. for Disease Control and Prevention, *COVID-19: COVID-19 Vaccines Work*, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/work.html (updated May 20, 2021).

The BOP's efforts to vaccinate inmates against COVID-19 at FCI Fort Dix and elsewhere also suggest that Defendant will have the opportunity to receive a vaccine booster if he has not done so already. *See United States v. Goston*, No. 15-20694, 2021 WL 872215, at *2 (E.D. Mich. Mar. 9, 2021) (denying compassionate release to defendant with obesity and asthma housed at FCI Fort Dix because "his access to the COVID-19 vaccine mitigates any extraordinary and compelling reasons that might otherwise justify release."). While Defendant is surely still at risk of contracting COVID-19, the improved conditions at FCI Fort Dix do not present extraordinary and compelling reasons for his early release. *See United States v. Del Rosario Martinez*, No. 19CR5218-MMA, 2021 WL 956158, at *4 (S.D. Cal. Mar. 10, 2021) (finding no extraordinary or compelling reasons for early release for defendant with two high-risk

health conditions because "[d]efendant is housed at an institution where the spread of the virus is currently minimal to virtually nonexistent.").

Although Mr. Johnson has not supplied support for his cancer diagnosis and/or prognosis, Mr. Johnson has been transferred to Federal Medical Center Butner, which lends some support for his diagnosis. The Court assumes, therefore, that Mr. Johnson's comorbidities coupled with his prostate cancer diagnosis may present extraordinary and compelling reasons, even though he is currently at a medical facility.

Even if Defendant's medical condition and the circumstances at FCI for Dix, and potentially FMC Butner, presented extraordinary and compelling circumstances for compassionate release, "a court may deny the requested relief if the 18 U.S.C. § 3553(a) factors do not weigh in favor of the defendant's release." *United States v. Adams*, No. 3:00-CR-00697, 2020 WL 6063055, at *5 (D.N.J. Oct. 14, 2020) (citing United States v. Pawlowski, 967 F.3d 327 (3d Cir. 2020)).

In this case, the § 3553(a) factors weigh against granting Defendant's request. First, the nature of Mr. Johnson's conviction includes his organizational role in a conspiracy to commit murder-for-hire with a firearm. At sentencing, Defendant fell into criminal history category II, which accounts for other instances of physical violence and the use of a firearm. Pursuant to the United States Sentencing Guidelines, Mr. Johnson's total offense level was a 29. That, coupled with his criminal history category of II, projected a range of 97-121 months imprisonment. However, Count 4 of the indictment, a violation of 18 U.S.C. § 924(c) for Possession and Use of a Firearm During a Crime of Violence and Aiding and Abetting Thereof, carried a mandatory 10-year sentence, thereby making Mr. Johnson's aggregate sentencing range 217 to 241 months.

9

The Court granted the Government's USSG §5K1.1 Departure Motion and downwardly departed from an offense level of 29 to a level of 23 based upon the substantial assistance Mr. Johnson provided during the prosecution of the case, which included his testimony at the trial of Defendant Ronald Galati. Thus, his new Sentencing Guideline Range was 51-63 months. In addition, the Court varied downward as to Count 4 by 12 months, taking the 120-month consecutive term of imprisonment down to 108 months. Ultimately, the Court imposed a custodial sentence of 168 months, reflecting a term of 60 months as to Counts one and six to be served concurrently, and a term of 108 months on Count 4 to be served consecutively. Mr. Johnson was also sentenced to a 5-year term of supervised release and ordered to pay restitution and the special assessment.

Mr. Johnson is scheduled to be released from custody in December 2025. At the time he first filed his motion, he had four years remaining on this sentence, and continues to have over a year remaining. Mr. Johnson received a considerable reduction of his sentence; his exposure prior to the departures saw a Guideline Range of 217-241 month of imprisonment. Mr. Johnson saw a six-year reduction from the high end of that Guideline Range reflected in his sentence because of his assistance to the Government and the Court's consideration of other § 3553(a) factors. On this record, further reducing Defendant's sentence would not adequately reflect his criminal history, promote respect for the law, or deter criminal conduct. *See United States v. Pawlowski*, 967 F.3d 327, 331 (3d Cir. 2020) (finding that a district court may deny compassionate release where granting a defendant's request would require a "substantial sentencing reduction" and conflict with § 3553(a) factors). Thus, the § 3553(a) factors confirm that Defendant is not entitled to early release currently.

The Court will therefore dismiss Mr. Johnson's motions with out prejudice and with leave to file an Amended Motion to include support for his recent cancer diagnosis and prognosis and his new circumstances at FMC Butner.

### IV.   Conclusion

For the reasons set forth above the Court will deny Defendant Johnson's Motions for compassionate early release under the First Step Act without prejudice and with leave to file an amended request.

An appropriate order will follow.

September 26, 2023

_____
Hon. Joseph H. Rodriguez, USDJ